347 F.Supp. 634 (1972)
COALITION FOR the ENVIRONMENT, ST. LOUIS REGION, a corporation, et al., Plaintiffs,
v.
LINCLAY DEVELOPMENT CORPORATION, a corporation, et al., Defendants.
COALITION FOR the ENVIRONMENT, ST. LOUIS REGION, a corporation, et al., Plaintiffs,
v.
John A. VOLPE, individually and as Secretary of Transportation, et al., Defendants.
Nos. 71 C 519(1), 72 C 32(1).
United States District Court, E. D. Missouri, E. D.
August 17, 1972.
*635 Lewis C. Green, Green, Hennings & Henry, and Dennis J. Tuchler, and Liberman & Baron, St. Louis, Mo., for Coalition for the Environment, St. Louis Region.
Hackbert, Rooks, Pitts, Fullager & Poust, Chicago, Ill., F. Wm. McCalpin and Dominic Troiani, Lewis, Rice, Tucker, Allen & Chubb, St. Louis, Mo., for Linclay and Earth City.
Wm. M. Cohen, Atty., Dept. of Justice, Washington, D. C., Daniel Bartlett, Jr., U. S. Atty., David W. Harlan, Asst. U. S. Atty., St. Louis, Mo., for federal defendants.
Robert L. Hyder and John H. Gladden, Jefferson City, Mo., for State Highway Comm., and for defendants Stapleton, and others.
Arthur D. Goldstein, Acting Asst. Chief Counsel, for Right-of-Way and Environmental Law, Fed. Highway Adm., Dept. of Transportation, Washington, D. C., Robert L. Hyder and John H. Gladden, Attys., State Highway Comm., Jefferson City, Mo., for State Highway Comm. and members.

MEMORANDUM
MEREDITH, Chief Judge.
The above consolidated causes involve a dispute over the construction of a residential, commercial, and light industrial development known as Earth City. After unsuccessfully opposing the rezoning of the Earth City property, two not-for-profit corporations professing concern for the condition of the environment and two individual members thereof, who reside in the vicinity of the project, instituted suit in cause 71 C 519(1) against the developers of the project, Linclay Corporation and Earth City Corporation, and the Army Corps of Engineers and certain officials thereof. Subsequently, the same plaintiffs, with the addition of one other not-for-profit corporation interested in the environment, initiated another suit in cause 72 C 32(1) against the United States Department of Transportation and the Missouri State Highway Commission and certain of their officials. On March 13, 1972, the cases were consolidated for trial. On May 5, 1972, at a hearing on these causes, the Court advised plaintiffs that the complaints appeared to be seriously lacking with regard to their allegations of standing. All pending motions were withdrawn by the parties and plaintiffs were given leave to file an amended complaint. Plaintiffs in the above causes added one additional individual member of the corporate plaintiffs residing in the vicinity of the project, and filed a one-count amended complaint in cause No. 71 C 519(1) against all of the original defendants in the above two causes. No amended complaint was filed in cause No. 72 C 32(1). The amended complaint in cause No. 71 C 519(1) encompasses the causes of action and parties in cause No. 72 C 32(1). In substance, the amended complaint alleges that defendants failed to comply with various statutes of the United States and certain ordinances of the County of St. Louis, Missouri, in connection with the construction of the Earth City project. Plaintiffs seek to enjoin the continued development of Earth City by the defendants until certain phases of the *636 project receive approval by the various federal defendants and comply with the United States statutes and county ordinances. Plaintiffs ask this Court to declare that the federal defendants have jurisdiction over and the authority to grant or deny such approvals, and in this regard, further ask this Court to require that any such approval be withheld until environmental impact statements are prepared and filed by the federal defendants. Jurisdiction is alleged under 5 U.S.C. § 702, 28 U.S.C. §§ 1331(a), 1337, and 1361, and the doctrines of pendant and ancillary jurisdiction.
Multiple motions by the various parties are presently before this Court. Once again, each of the defendants has raised the initial question as to whether the plaintiffs have legal standing to bring this action. All parties have thoroughly briefed, orally argued, and have been given an opportunity to present all material concerning this issue to the Court.
In a most recent case very similar to the one at hand, the United States Supreme Court dealt with the problem of standing. Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).
The Court noted that what has traditionally been referred to as the question of standing to sue, is whether a party has a sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy. Further commenting on the question of standing, the Court stated at page 732, 92 S.Ct. at page 1364:
"Where the party does not rely on any specific statute authorizing invocation of the judicial process, the question of standing depends upon whether the party has alleged such a `personal stake in the outcome of the controversy,' Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L.Ed.2d 663, as to ensure that `the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution.' Flast v. Cohen, 392 U.S. 83, 101, 88 S.Ct. 1942, 1953, 20 L.Ed.2d 947. Where, however, Congress has authorized public officials to perform certain functions according to law, and has provided by statute for judicial review of those actions under certain circumstances, the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff."
In the instant action, as in Sierra Club, plaintiffs rely upon § 10 of the Administrative Procedure Act (APA), 5 U.S.C. § 702, which provides:
"A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof."
As noted in Sierra Club, early decisions under this statute interpreted its language as adopting the various formulations of "legal interest" and "legal wrong" then prevailing as constitutional requirements of standing. But, in Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970; Barlow v. Collins, 397 U.S. 159, 90 S.Ct. 832, 25 L.Ed.2d 192 (1970); and Sierra Club v. Morton, supra, the Court held more broadly that persons had standing to obtain judicial review of federal agency action under § 10 of the APA where they had alleged that the challenged action had caused them "injury in fact", and where the alleged injury was to an interest "arguably within the zone of interests to be protected or regulated" by the statutes that the agencies were claimed to have violated.
In Sierra Club, which dealt with the "injury in fact" test, the Court was presented with a question not before it in Barlow or Data Processing, namely, what must be alleged by persons who claim injury of a non-economic nature to interests that are widely shared. In that case, the Sierra Club alleged that a proposed recreational development in the Mineral King valley would result in detrimental *637 aesthetic and environmental changes. Although recognizing that injuries of a non-economic nature such as aesthetic, environmental, and recreational well-being may be sufficient to constitute a basis for standing under § 10 of the APA, the Court held ". . . the `injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured." 405 U. S. l.c. 734, 92 S.Ct. l.c. 1366.
Further elaborating on the insufficiencies of the Sierra Club's position, the Court stated:
"Nowhere in the pleadings or affidavits did the Club state that its members use Mineral King for any purpose, much less that they use it in any way that would be significantly affected by the proposed actions of the respondents." l.c. 735, 92 S.Ct. l.c. 1366.
The view that allegations of individualized injury are superfluous on the theory that this was a public action was rejected by the Court. As the Court stated: ". . . broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must have himself suffered an injury."
The Earth City project is to be constructed on a tract of land in St. Louis County, Missouri, in the vicinity of Interstate Highway 70 and the Missouri River. This tract consists of approximately 1,700 acres, 1,500 of which are owned by Linclay Corporation and Earth City Corporation, and 200 of which are subject to an option to purchase held by Linclay Corporation. The entire project, including the levee and the interchange, is being financed with funds provided by the Linclay Corporation and the Earth City Corporation.
In their amended complaint, plaintiffs allege that the individual plaintiffs and the individual members of the corporate plaintiffs, and the organizational members of plaintiff coalition, who reside, work, or pass by the vicinity of the project will be adversely affected by the construction in that it will be offensive; will replace the open space; create traffic jams; increase noise and air pollution; and will cause the loss of an opportunity for St. Louis to build a regional park. One of the three individual plaintiffs, John Nichols, who lives approximately three miles from the proposed site, alleges that the development would depreciate the value of his home, but stated in his deposition that he had no evidence this was true. He further stated that he had never been on the proposed site for any reason, except to drive over it. The other two individual plaintiffs, Charles and Anne Englert, live approximately a mile and one-half from the project. They also claim that the property value of their home would depreciate, but were likewise unable to substantiate such a claim. Other than driving over the site, Mr. Englert stated that he walked on the site once or twice a month and his wife stated that she has been on this tract of land. Mr. Englert further stated that he knew the land was not publicly owned and indicated he knew he had no permission to use it.
Although plaintiffs have alleged that they will be adversely affected, none has shown any individualized harm. None was able to allege facts showing he has or will suffer an economic loss as a result of the Earth City project. The allegations in regard to the air and noise pollution, and the traffic congestion, are subjective, conclusory, and unsubstantiated. In this regard it might be noted that there are federal statutes and regulations, state statutes, and local ordinances which provide a standard for air and noise pollution. Plaintiffs have not alleged that there have been violations of such statutes, nor can they conceivably show that these will be violated in the future. Moreover, there is nothing in the record indicating that any of the plaintiffs will be affected in their activities by the actions of defendants, much less significantly affected.
The only injury to plaintiff is the apparent fact that the actions of defendants *638 are personally displeasing or distasteful to them due to the parties' differing philosophies of land-use planning. The plaintiffs want open space, while the corporate defendants want a planned urban community. Judicial review does not extend under the APA to those who seek to do no more than vindicate their own value preferences through the judicial process. Sierra Club v. Morton, supra; see also: San Francisco Tomorrow v. Romney, 342 F. Supp. 77 (N.D.Cal.1972).
In the instant case, plaintiffs have had an opportunity and did file an amended complaint. This Court finds and concludes that none of the plaintiffs has standing to prosecute this action as plaintiffs cannot allege facts showing they have suffered or will suffer injury, economic or otherwise. Accordingly, in cause No. 71 C 519(1), the motion of defendants Linclay Corporation and Earth City Corporation for summary judgment, and the motions by the remaining defendants to dismiss being treated as motions for summary judgment, will be sustained. Additionally, as 72 C 32(1) is wholly encompassed by 71 C 519(1), it will be dismissed with prejudice. In light of the above, it becomes unnecessary to discuss any remaining motions.